Good morning, and please accord. My name is Gary Ettinger. I represent the appellant, American Entertainers. It's a privilege to have this opportunity to talk about primarily First Amendment issues. Hopefully we'll have a good conversation about that. We raise three facial constitutional challenges to the Rocky Mount sexually oriented business license and conduct and other rather comprehensive code. We talk about overbreath. We talk about a licensing issue, a prior restraint issue, and also an age disqualification involving adults who are over 18 but under 21. I'd like to start with the overbreath challenge because it's really the most consequential for the ordinance. If the court finds, as we've urged, that the ordinance is unconstitutional for overbreath, then the entirety of the ordinance would be unenforceable. And there are two ways, I think, of getting at this issue of overbreath. We can do a shorthand version, which is that the ordinance at issue here in Rocky Mount is almost word for word identical to ordinances or statutes actually stricken by this court in Giovanni Carandola 1 v. Basin, a 2002 case, and also Legend Nightclub v. Miller, I think it was, a more recent case, 2011, which I think Judge Wynn authored. So we could just simply say, well, they're the same thing as this binding precedent, and so the case is over. We can also take a look at the details of it and kind of go back to first principles and explain why that would be the case. We have an unusual ordinance here. It's really rather quirky in many respects because it makes extensive use of the disjunctive word or. And so, for instance, starting out, what we usually think of as the defining characteristic of adult entertainment is nudity. That's what makes it different from any other form of entertainment, and it also is alleged to lead to adverse secondary effects, which are the basis for regulating these businesses in a special manner. The Rocky Mount ordinance does not just regulate nudity because it uses this disjunctive word or. So it talks about specified anatomical areas, and it also talks about specified sexual activities, which are a form of conduct. Either one of those can suffice. Now, even if we were just dealing with nudity, that can often be problematic. So, for instance, the Supreme Court has told us in Southeastern Promotions v. Conrad and Shad v. Ephraim, Borough of Mount Ephraim, that merely having nudity in a play or performance doesn't take it outside the protections of the First Amendment and doesn't put it in the category of sexually oriented businesses, which are subject to special regulations. So here we're dealing with a code that is not just dealing with nudity, but also addresses fully clothed performances, if they have these specified sexual acts. So we should take a look at that. Again, we see definitions in the alternative. And getting down really to the fundamental problem here, you have to look at it in an overall context, but the real problem with this ordinance is twofold. And it's the same problem that the statutes faced in Carindola I and Legend Nightclub, is this language, fondle and erotic touching, as being a trigger event for this ordinance. The language, specific language, in Carindola and also in Legend Nightclub, as I recall, was fondle, caress, or touch. And so when Carindola I first came before this court, this court said, actually said it was overbroad. Interestingly, that state statute only involved liquor licensing, where the stat, the ordinance we have here. But there it just said, or touch. Erotic touching is much different than just, or touch. I would respectfully disagree for two reasons, Your Honor. One of them is that if we look at cases which have looked at that specific verbiage, erotic touching, it is frequently declared unconstitutional for overbreath. And we cite a number of those cases in footnote eight of our opening brief. Schultz v. Cumberland was one. Ramsey's v. Orange County was another one where the erotic touch language was still deemed overbroad. And the reason being is because it's not tied directly to sexual contact. So, for instance- Erotic mean? Well, there'd be some interesting vagueness issues perhaps. But I would say sensual. I'll give you a good example. One of the things I was looking at in preparation for our argument is some real world examples here in Richmond where this ordinance might apply. And so I think it's classics, Hare and Equus, maybe Full Monty a little bit. But let's look at what's going on in Richmond. The Carpenter Theater this season is going to have a presentation by the Richmond Ballet of Sleeping Beauty. And if you go on the website, I actually have the download here, we see a photograph that I think is erotic touching. It's a male dancer touching the pubis of a female performer, which is exactly the thing that concerned this court in these earlier cases. Another example we ran across, there's a smaller play troupe here called Triangle- Does it go more to the lack of a mainstream entertainment exemption in this ordinance? Yes. And in answer to Judge Thacker's question, there are really two parts of it. One is that the erotic touching does not really cure the problem. And then the other part of it is that it does not have an express exception for mainstream entertainment. And in those statutes and ordinances which this court has upheld, that is a universal component. If you look around the country at how these ordinances are typically written, almost all ordinance have exactly the kind of language, usually verbatim, that this court approved in Carandola II, the express exception for mainstream theatrical and artistic presentations. Maryland had a weird variation on that in a statute that was upheld, I think in the image case. And it talked about an intentional act intended to provoke sexual gratification. So very much the same thing. Not erotic touching, but something that would be more like an actual sex act. So looking at how this court has specifically dealt with the issue of this carve-out, the safe harbor provision, if you will, for those things which should be protected, like the Richmond Ballet, like the Triangle Players presentations of a room upstairs, a view upstairs. In terms of how this is done properly, you have to have both aspects. So if you're going to start with a very broad definitional section, as we see here, where it applies to both nude and fully clothed performances, where it applies to alcoholic beverage establishments and dry establishments, and where it applies not just to nudity, but to the sexual conduct of some kind. We always have to have that bound with the express carve-out. And a good place to look for that is in the Legend Nightclub case. So Legend has the advantage of having some history behind it. So we saw what happened in Carandola I, where the same formulation was declared unconstitutionally vague. And this court kind of did a prescription for how to fix it, which the North Carolina legislature took to heart. And what they did is they removed the word touch from the definitional section, and they added the express exemption for theater. But the Carandola case, the Renton case, and other cases like that, the focus of cases that type necessarily have been put on, there's a burden that's put on the government insofar as the speech is an issue. In this case, what is, tell me, what is the harm of requiring a license for this type of business? Right. So in over-breath, what we're talking about, the city, for instance, in its briefing says, oh, this isn't so bad because it's not a full ban on constitutionally protected speech. But when we're talking about over-breath, it's not really the regulations that properly apply to a sexually oriented business. It's the problem of burdening speech that shouldn't be burdened at all. So if we're looking at the example of the Richmond Ballet, we would not want to have a circumstance in which the venue has to be, the Carpenter Theater has to be specially licensed to show the event. We don't want to be in a situation where the actual ballet performers have to get an adult entertainment license. And they also should not be subject to the conduct provisions and ability to revoke licenses. Well, in this case, is this Rocky Mount zoning ordinance regarding adult entertainment establishment, is that what you really care about? Is that what I really care about? Is that what you're really talking about here? Is that particular zoning ordinance? Not zoning. As a matter of fact, it's kind of interesting how this case developed. One of the threats to the operation of this business was the fact that if it was an adult entertainment establishment, it would be... That's because you've not challenged the zoning ordinance on appeal? No, we did. Have you challenged it? No. What happened, Your Honor, is... I want to make sure I... I'm getting mixed signals. I want to make sure I understood that answer. Have you challenged the zoning ordinance on appeal? We have not. We have not. That's why I asked the question. Is that what you really care about? What happens, it actually... And why is the answer... What is the answer? If you haven't challenged it, then do you really care about that zoning ordinance? Well, we didn't challenge it directly, Your Honor, because it was resolved at the trial court level. And it turns out it's not a disqualifier for this particular business. What we're talking about, though, actually does impact the zoning... I want to follow up and make sure I understand the constitutional argument you're making. So then, are we only concerned just about the burden that's imposed by requiring this license? Yes, with a little explanation. My client is most concerned about the licensing features and the regulations on conduct. It would prefer that they be liberalized or not there. I'm trying to put it in a constitutional way to look at it, because I told you the cases here look at the burden, and you told me it didn't challenge the ordinance itself. So the concern here is the burden that's imposed by requiring this operational license. Right. So the burden... Right, meaning yes? That is correct. I'm not trying to feed words in your mouth, but I'm trying to make sure I understand what you're saying. No, I think Your Honor has it exactly right. But again, this is a facial challenge, and the focus of the attack is not on... Well, you are challenging the ordinance. You're just not challenging the zoning part of it. Right. But the fundamental result of this challenge is it goes to the definitional section. And if the definition is overbroad, it actually reaches all the zoning concerns as well, because the zoning restrictions rely on these same definitions. Is there a First Amendment right to own a business? There's a First Amendment right to, if you will, own the printing press. It's the means of production. And so let's talk about that a little bit, because it deals with one of our challenges, the age... Stay right there. Is there a First Amendment right to own an adult business? Yes. Yes, there is. That's based on what precedent? I would say just the general idea that we have a right to speak. I think when we were talking about first principles in the briefing, I think we went back to Virginia Board of Pharmacy, and also you could go back to New York Times versus Sullivan, I suppose, and Southeastern Conrad's versus Southeastern Productions, which talk about the right to produce speech. You said there's a First Amendment right to own the printing presses. In your analogy, what are the printing presses of this business? The New York Times, right. No, of sexually oriented businesses. What are the printing presses? It would be a facility, and in particular, with a stage, because you have to have a stage to do the performance. No, you could just have an empty stage. So I guess the printing presses, in your analogy, are the people, the dancers? No, Your Honor. It would work like this. There is a right to speak. We all know that. And so what does that encompass? Obviously, speaking, like I'm doing now. Listening, like you're doing now. Patronage, the right to buy the speech or to access it. And production. But what is the speech in the sexually oriented business? What is the speech? The speech is the exotic dancing, which occurs in the establishment. So the exotic dancers are the printing presses, in your analogy? No. Well, yes. I think that's yes. The better analogy, perhaps, would be, again, the ballet. So we have a number of speech interests there. We're talking about, again, the individual performers, the artistic performers. We're talking about the audience, and we're talking about the production company. So what we're talking about here, then, is the adult business is basically the production company. And so when you have licensing or taxing requirements that apply to just the means of production, that involves First Amendment principles. The Murdoch case, which we don't brief, has to do, for instance, with the taxation of specific taxation. You don't have any cases that say equity ownership in some entity is a protected First Amendment, right? The way I would say no, because actually this is a case of first impression that we bring to the court. What we have are cases that say that to be a producer of speech is a protected interest. And what we have here with the Rocky Mount Ordinance is not a law of general application. It's a law that only targets adult entertainment, which is the speech component. And so we know that the government has an interest in regulating for adverse secondary effects. We don't question that. But the way that they get at it here with these age restrictions, we do see is directly involving a speech right. If we recognize this First Amendment right to own or operate an adult business, and then we focus on, well, you have First Amendment right, then to what extent does government burden this speech unconstitutionally? What's the limiting principle we apply? This First Impression question you bring to it. What's the limiting principle? How do we do it? What we look at is intermediate scrutiny applies because we're dealing with adult businesses. That's well established in our circuit, in this circuit. So intermediate scrutiny applies, which means you have to have a substantial government interest, which we readily concede, and you have to have narrow tailoring. And so the question here is, if it's lawful for an 18-year-old to act as an entertainer or act as a patron in these establishments, what would be the interest in the government in prohibiting sui juris adults, 18, 19, and 20, from having the same rights as any other adult? Is that a First Amendment argument or an equal protection argument? I prefer the First Amendment challenge, Your Honor. I think it's a little cleaner to deal with, but we raise it in the alternative both below and before this. Like you have standing to raise an equal protection argument. The Essence case, Your Honor, allowed a facial challenge by the nightclub to a very similar prohibition that disallowed anyone under the age of 21 from entering an adult club. That's a First Amendment case, not an equal protection case. Then what I would say, Your Honor, on the equal protection side, there is standing because there is a direct impact on this business in terms of its ability to sell the business, for instance, or to demise it, you know, to put it in a will. Also it's not just ownership that's at stake here, but the right to have managers who are under the age of 21. And that right is directly affected by this ordinance. And so the pool of managers is smaller. This is a fairly young business, and so it's not ridiculous to say that a 20-year-old manager would be something perhaps desirable in one of these businesses, at least from the perspective of the owner. So there is actually a direct effect which would provide standing on the equal protection side. All right. I'd like to reserve the remainder of my time. Thank you. You have some. Mr. Ellis. Thank you, Your Honor. May it please the Court and the Council. Nick Ellis on behalf of the City of Rocky Mount. And I'll address the three issues that have been presented on this appeal in the order in which they've been briefed, and then obviously respond to questions that the Court may have. So I'm going to start with the overbreadth analysis. And I think in any analysis it behooves us to start at the beginning as far as from one of the comments I believe from Judge Wynn earlier on in the first argument, how is this Constitution? Well, first of all, we all recognize that the City of Rocky Mount has a substantial interest in regulating topless dancing because it has a long history of negative secondary effects. So what Rocky Mount did was to enact this sexually oriented business ordinance to protect that interest. And it did so in a narrowly tailored way so that they are not substantially more burdensome in its application than necessary to advance that interest. Does the ordinance apply to establishments that do not sell or permit the consumption of alcoholic beverages? It applies to those businesses if they regularly provide adult live entertainment. So it could be completely dry? It could be completely dry, but they have to regularly provide adult live entertainment. Now, like a lot of statutes, it could be perhaps clearer. In defining what an adult cabaret is, which is the type of business that is operated by the plaintiff. Most of these ordinances that have been approved, like in Carindola 2, were tied pretty closely to the liquor laws, which is one of the factors in finding deleterious effects. And here you look like you cover a large grouping of organizations, which would include mainstream entertainment organizations, which Carindola 1 said you can't do. And to respond to that, first of all, Judge, again, the adult cabaret talks about retail businesses or private clubs as defined in North Carolina General Statute 18B. That is the only definition of retail business or private club in the entire North Carolina General Statute, and it deals with the issuance of ABC permits. So I think theoretically, one could have a dry establishment and regularly provide adult live entertainment, but I think... What happens if they just had available for viewing by its patrons? Because that doesn't seem to be limited by the regularly provides language. In all due respect, I would disagree, Your Honor. I think regularly that adverb talks about available and providing. And I think if just the kind of common sense analysis of this type of case, which is what the other courts have done, I believe the Schultz case is maybe one of the primary ones that dealt with that and talked about, okay, how do we differentiate and make sure this does not apply to mainstream, because then we have overbreadth. Of course, one of the other points we would make is that is not a challenge that was asserted in the complaint. And the court doesn't know and have notice of what the allegations are and what's being challenged, unless it's in the complaint. Same for the defendant. So the overbreadth argument that the ordinance applies to mainstream venues was only asserted for the first time in the summary judgment brief filed by the plaintiff. We responded to the district court and said we don't think that that is within the scope of the complaint. We did address it, nonetheless, but the court, of course, agreed with us and found that it was not overly broad. But as far as the term regularly provides or has available, the Schultz case dealt with that exactly and said, look, what are we dealing with? What does regularly mean? Well, it is an adverb and it's talking about, and the courts conclude in Schultz that it is a permanent basis. That's what they are doing. It is provided as part of their main principle of being. So I don't think that we can have the ballet, which, of course, the clubs like to refer to constantly. The ballet is not regularly providing an event, a program, a show that has specified anatomical areas or specified sexual activities. Well, if we disagree with your reading of that phrase and were to find that available for viewing is not modified by regularly, do you lose? It would be an uphill battle, Judge. I'll agree with that. Again, if the court is going to consider, first of all, that overbreadth, because the only challenge in the complaint deals with fondling or erotic touching. Under Carandola 2, fondling with the limiting construction, and I believe the phrase there, if I can find it, dealt with the construction of manipulating specified erogenous zones. The plaintiff in this case argues that an incidental brush of the breast or the buttocks would be erotic touching. Judge, we did define erotic in our brief, and it is not just an incidental brush or touch. So fondle or erotic touching, it's one and the same. Carandola 2 said that that is not overly broad, and therefore, we believe that the Rocky Mountain Ordinance, as far as that provision is concerned, likewise, is not overly broad. Another reason I think that the ordinance, in this case, differs from the general statute that was considered in Carandola 1 was Carandola 1 dealt with the general statute that did not have a preamble or a purpose. The Rocky Mountain Ordinance, Section 13-270, has an expressed purpose, and it talks about the deleterious effects of topless bars, longstanding. Rocky Mount, as part of its ordinance, has a case study, and it shows, of course, in these establishments versus other restaurants or nightclubs that serve alcohol, increased incidence of intoxication, drunk driving, altercations, underage drinking. So since America has only challenged the license provision here, are you giving us what you would maintain to be the legitimate interest that Rocky Mount would have in requiring these businesses to acquire a license? Yes, sir. And again, this is not a prohibition on this activity. It is merely saying, look, we've got a substantial interest in regulating this type of activity, and what we're going to do to regulate that, and we're going to create an ordinance that says you can do this, you just have to come apply for a license to get the authorization to go do that. And that is something that it is not, of course, the plaintiff has never applied, I think, another, for a license. I think one of the other things to keep in mind is that with an over-breath challenge, that the court shall not find an ordinance is overly broad unless it reaches a substantial number of impermissible applications. And, of course, in this case, there's no evidence in the record of any business hosting some incidental event involving some degree of nudity or adult live entertainment, and it was cited. There's no evidence of a business who wanted to host or put on some type of event with that activity and said, no, we're not sure if we're going to have to get a license or not, so we're not going to do that. So, I don't think that there has been any showing, either in the record or in argument, of a substantial number of impermissible applications. There's no realistic danger that anybody's First Amendment rights are going to be frustrated or denied by having this ordinance in place. So, with the regularly provides, which all due respect, Judge Agee, I do believe that that does modify the two verbs that are in the provision here as far as providing or has available for viewing. And with the purpose preamble talking about what we're trying to do is regulate the negative secondary effects that come from these types of businesses, then I don't think that there is any showing that this ordinance is applicable to mainstream venues that may have some type of show with some degree of nudity. The touching, the ballet lifts, the cheerleader lifts mentioned in the plaintiff's brief, that is not fondling, that is not erotic touching, and so that would not bring into application the ordinance to those types of businesses. The second issue that was raised was the prior restraint issue. I think we dealt fairly straightforwardly with that in our brief. The plaintiff's main argument, of course, with prior restraint, you cannot have unbridled discretion, and there has to be a... Don't you think it's a little too much to say all applicable laws? No, sir, Judge. Pretty much gives the police chief discretion to pick whichever one of those laws it thinks? As the district court said, no, that's an objective analysis, all laws, which I would hope we all are going to follow all laws, not have a menu of, well, I'm going to pick these to apply today and these to apply tomorrow. What's to stop the chief of police from doing that? He applies five statutes to the strip club today, and there's a different one tomorrow, and he picks five other statutes to do that. What in the ordinance cabins his discretion to do that? Well, first of all, Judge, I think we start off with it is not a subjective analysis by the chief as far as how is this business going to operate? What are they actually doing? As we pointed out, all of this information unilaterally comes from the applicant. Here's my business, here's my floor plan, here's how we're going to operate, whether we're going to do it or not. All kinds of information are exclusively provided to the city by the applicant. And then as the judge said, it's just an objective analysis about all laws. We don't have to say whether or not there's a price gouging statute in North Carolina that's applicable to this, because it's not. So we couldn't cite that as a reason to deny an application. What kind of gives a little concern there is that the police chief, he has to examine all applicable laws. He gets to sort of pick and choose. And we don't know what those laws are. Are we talking state law? Are we talking federal law? What are we talking? And Judge, and again, not to oversimplify, I think it makes it clearer for everybody to say all applicable laws. I think as soon as you start... I don't mean that. I don't literally mean all applicable laws. Yes, sir, Judge. As soon as we start enumerating laws, what's going to happen? We're going to leave out one. So there should not be any mystery to the applicant. What do I have to comply with to get this license? Well, if I'm going to serve alcohol, I've got 18B under North Carolina. I need to comply with that. Let me ask you one other question on that. If we disagree with that, is that provision severable? Yes, sir. So what happens if it's severable? What happens to the statute? Well, as far... What's left? I'm sorry? What's left, then? Well, Judge, and I think what you could do, perhaps rather than sever it, you could have a limiting construction of it. Because, again, back to the ordinance. What's the ordinance say? It talks about all applicable laws, including but not limited to the city's buildings, zoning, and health regulations. So if the court were to say, okay, well, we're going to say this means all applicable laws pertaining to buildings, zoning, and health regulations, then that narrows, that gives us some definition to the box of applicable laws. Well, if you have just that one denial provision right there, you take that one out, the rest of them would be there. I'm sorry? It would take that denial provision out if you severed it, but the rest would be there, right? Yes, sir. Then we could not say, okay, you don't comply with this law. So there would still be other reasons that an applicant could be denied a license. But, again, I think that what we have, and again, going back to the Schultz case from the Seventh Circuit, there is language in that case where the exact same applicable law provision was found to be constitutional. That talked about no license would be issued if the premises was not approved as being in compliance with applicable laws and ordinances. And that court found that that was not unconstitutional, and therefore it was upheld. So I think with the language and logic from the Stakehouse case, Stakehouse v. Raleigh, where there was the verbiage, adversely affect, which someone could perhaps argue is subjective, but the court found that no, that that was not unconstitutional. With the Schultz case finding all applicable laws being in compliance with constitutional requirements, then we believe that the ruling from the district court should be affirmed on this issue as well. Where are we going with this? I want to beat that. There are a lot of applicable laws you would think that he couldn't just pick that one to use. I mean, Rocky Mountain has all that I saw. You've got to have an identifying chip on it. If you don't have that identifying chip, you're breaking the law. And if it's on the premises, what are you going to do? And Judge, the reason you have that when you read the ordinance is because these dogs are trained to attack. What that chip does is allow you to locate an animal. And so if you're going to have a guard dog, it's got to have a chip because if that dog gets off the premises, they can do damage. And that's the reason behind that. So it's not just some willy-nilly law that the city of Rocky Mountain enacted, but it would be a law that yes, in a situation like this, they've had a homicide in the parking lot of this establishment, and it was a fight essentially between an individual who wanted to lap dance. The dancer said, I can't touch you like I used to. He gets upset, pushes the dancer. Her friend sees it. There's a homicide in the parking lot over that. So this is the type of business that yes, I would not be shocked if it had a guard dog. They deal in lots of cash. And if you're going to have a guard dog there, then you better comply with the local ordinance because it's all related to what Rocky Mountain is trying to do, which is protect the community from the negative secondary effects that these businesses generate. The final issue, of course, is the age restriction. Plaintiffs have failed to cite. We've not seen any where there's a constitutional right for this. The district court said we don't see any such right. Under the plaintiff's argument, it would almost be that there's a constitutional right to own any business because you could always have some kind of speech. I just want to have a restaurant. I don't want to have an adult club. I just want to have a restaurant. And, you know, once a day we're going to get up and read the news and make a comment about the news. Well, there's no right to that. Similarly, there is no right in the state of North Carolina, first of all, to get an ABC license. It's a privilege. It's not a right. And the courts have held in North Carolina there's no constitutional right to that. What you're trying to do is to put the onus on the individuals who would be responsible for the ownership and operation of these businesses. They all serve alcohol. Judge, the dry adult club is not going to be around very long. It's just not going to operate successfully as a business. So it makes sense and it's a substantial relationship between what Rocky Mountain is trying to accomplish by having individuals responsible for the ownership and operation of these clubs to be the same person who is dealing with the ABC permits. I think it would be a difficult situation, not a productive, healthy situation to have an 18-year-old have an SOB license, but he can't get an ABC permit. So then we've got somebody else getting an ABC permit. So now do we have a straw owner who's 18 years old who maybe doesn't have a criminal background that somebody else may have? So we don't think that there's a constitutional right that's been infringed by that. The district court agreed with that position and we would ask the court to uphold that ruling. Thank you. Thank you very much. Mr. Attinger? Yes, sir. Thank you. A couple points on the over-breath argument, which really is our central claim. We're dealing, of course, with definitional sections that apply to all portions of the ordinance, zoning, licensing, and all the conduct provisions. And we have had this really narrow focus on the specified sexual acts, which is the really problematic part of this ordinance. We heard a concession from the city today, which is they do acknowledge this applies to wet and dry establishments. It's a pretty obvious concession. For instance, the definition of specified sexual activities is also used to define adult bookstores and adult mini theaters, and those are dry establishments. And so that concession is significant because it brings us way outside what this court has previously viewed in the Carindola cases and in the Legend Nightclub, which only dealt with liquor licensing statutes. It's a much broader impact. With respect to the regularly performing or regularly featuring, that's problematic for two reasons. One is because it does not seem to apply to the available for viewing portion of it. But even if we're just taking it on the face, the regularly feature is a problem for things like ballet because there are lifts in every ballet. Cheerleaders do lifts. If we're looking at modeling classes at a university, they are always going to feature those activities that trigger this ordinance. And on the available for viewing side, we also have just an interesting example. I mentioned the triangle players with the view upstairs, this play that they're putting on. The central feature of that play is they have a nude cutout of Burt Reynolds on stage. It's prominently featured as part of the backdrop. That would fit in this viewing category. It's not necessarily live performances, but would fall within the scope of the ordinance. And it's also not fondling or erotic touching. No, but it would be under the nude component. It also addresses nudity, and that's where that would fit in. Again, we're dealing with an exceptionally broad ordinance, really something unlike this court has dealt with previously. All the previous cases involve liquor establishments. Also, limiting constructions are important. So in Carandola II, the limiting construction on fondling that allowed that statute to survive, this court asked the attorney general, well, would it apply to Madonna, a stage performance? She's known for highly sexual, erotic performances, a lot of gyrating and touching of the naughty bits. And the attorney general said no, that would be like simulated masturbation. And the court accepted that concession as part of the reason to uphold the statute. In contrast, the record shows here when asked specifically, the individual responsible for administering this program said, acknowledged that even just grazing the breasts on stage would be erotic touching and would trigger the impact of the statute. With regard to the argument the city made that this ordinance has not been enforced against ballet yet, that argument always fails. It was made in Judge Wynn's case, the legend entertainment case, where they had affidavits saying we're not going to apply it to ballet. But what the court said in the legend's case is we don't rely on the noblesse oblige of government citing the U.S. v. Stevens case. We just look at the plain language of this ordinance. It is facially overbroad. One thing I wanted to mention about the restriction on age, the disqualifier, is that in Rocky Mount it is unique to adult entertainment, which is a speech activity. You don't see that prohibition elsewhere. And if we're talking about a narrow tailoring, as we must with intermediate scrutiny, take a look at how the state of North Carolina deals with age, with its liquor laws. It doesn't prohibit ownership outright. You can own up to 25 percent of an adult liquor establishment, and if you're not active in the daily affairs, you can be 100 percent owner. That's just simply not permissible in Rocky Mount. Thank you for your time this morning.
judges: G. Steven Agee, James A. Wynn, Jr., Stephanie D. Thacker